# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DEBORAH A. KRUKOWSKI, *Mother to CK*,

                Plaintiffs,

v.

THE LOCAL 65 ROOFERS UNION, THE MILWAUKEE ROOFERS' HEALTH FUND, THE BOARD OF TRUSTEES OF THE MILWAUKEE ROOFERS' HEALTH FUND, TAYLOR NELSON, and LANGER ROOFING & SHEETMETAL,

                Defendants.

Case No. 24-CV-1097-JPS

**ORDER**

## 1.    INTRODUCTION

Deborah A. Krukowski ("Krukowski") on behalf of her minor child CK (together "Plaintiffs")[1] sues Defendants the Local 65 Roofers Union

---

[1] CK will be identified only by initials. Fed. R. Civ. P. 5.2(a)(3). The complaint alternates between using the singular and plural forms of "Plaintiff(s)." *See generally* ECF No. 1. The Court will use the same term in this Order for consistency, while noting that the caption of the case seems to reflect that Krukowski is the sole Plaintiff. The "beneficiary"—here, CK, *see infra* Section 3—is actually the proper plaintiff in this type of action. 29 U.S.C. § 1132(a)(1). Krukowski does not appear to raise any claims independent of CK's.

In any event, because Krukowski is an attorney, she is permitted to litigate on CK's behalf. *See Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010) ("[A] next friend may not, without the assistance of counsel, bring suit on behalf of a minor party." (citing *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) and *Mekker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) (per curiam))).

("Roofers Local 65"[2]), the Milwaukee Roofers' Health Fund ("MRHF"), the Board of Trustees of the Milwaukee Roofers' Health Fund (the "MRHF Board of Trustees"), MRHF Board of Trustees chairman Taylor Nelson ("Nelson"), and Langer Roofing and Sheetmetal ("Langer") (together "Defendants") for allegedly failing to give them proper notice of the termination of CK's health insurance as required by the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1611 et seq. ECF No. 1.

MRHF and the MRHF Board of Trustees answered the complaint, ECF Nos. 18 and 26, whereas Roofers Local 65, Nelson, and Langer ("Moving Defendants") all filed motions to dismiss, arguing that the complaint fails to state a claim against each of them and/or that they are not proper defendants. ECF No. 20 (Roofers Local 65); ECF No. 23 (Langer); ECF No. 44 (Nelson). Each motion is fully briefed. ECF Nos. 21, 29, and 31 (Roofers Local 65); ECF Nos. 24, 28, and 30 (Langer); ECF Nos. 44, 47, and 49 (Nelson). For the reasons stated herein, all three motions will be granted and Moving Defendants will be dismissed with prejudice from this action.

## 2.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of complaints that fail to state a viable claim for relief. To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

---

[2]Roofers Local 65 self-identifies itself as such in its submission, which differs from how the party is identified in the complaint. *See, e.g.*, ECF No. 20. The Court will adopt the party's self-identification.

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is one with "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Twombly*, 550 U.S. at 556.

In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). At the motion to dismiss stage, the Court does not ask "did these things happen"; instead, "the proper question to ask is . . . '*could* these things have happened.'" *Olson*, 784 F.3d at 1099 (quoting *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014)). In any event, the Court "need not accept as true 'legal conclusion[s, or t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Ultimately, dismissal is only appropriate "if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (quoting *R.J.R Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)).

3.      **RELEVANT ALLEGATIONS**[3]

CK is the minor child of Krukowski and Raymond Leary ("Leary"). ECF No. 1 at 4; ECF No. 1-6 at 1, 3. Krukowski and Leary have joint legal custody of CK but CK's primary physical placement is with Krukowski. ECF No. 1 at 4 (citing ECF No. 1-6). CK has Type 1 Diabetes. *Id.* at 2.

Leary, who is not a party in this lawsuit, worked for Langer. *See id.* at 1 (stating that Langer "employed the employee who is one [of] the subjects of this case"); *see also* ECF No. 14 at 2 (noting that Leary worked for Langer). Leary is a member of the union Roofers Local 65. ECF No. 14 at 2; ECF No. 24 at 1.

Plaintiffs say in the complaint that Langer "provides health . . . insurance . . . to its employees." ECF No. 1 at 2. However, Langer states that Roofers Local 65 participated in a "multi-employer plan" to provide health insurance and other benefits to union members. ECF No. 14 at 2; ECF No. 24 at 1. Indeed, documents attached to and referenced in the complaint suggest that Leary's health insurance and benefits were provided through a multi-employer plan. *See* ECF No. 1-1 at 119–20 (defining "employee" to include "[a] full-time employee of a participating employer obligated under

---

[3]This summary of facts is mainly drawn from the complaint and attachments. ECF Nos. 1, 1-1–1-6; *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (noting that the Court may consider "documents that are attached to the complaint[ and] documents that are central to the complaint and are referred to in it" (collecting cases)).

Many allegations in the complaint are ambiguously phrased, unclear, or disorganized. The Court therefore at times draws on information outside of, but consistent with, the pleadings (and which Plaintiffs have not disputed) to further contextualize Plaintiffs' allegations. *See Price v. Chi. Pub. Sch.*, No. 23 CV 5179, 2024 WL 4300655, at *4 n.3 (N.D. Ill. Sept. 26, 2024) ("The court can take judicial notice of its own docket and the dockets of other courts in related matters." (quoting *In re Prate*, 634 B.R. 72, 75 (N.D. Ill. 2021))).

a Collective Bargaining Agreement to contribute to the Health Fund" (italics omitted); ECF No. 1-5 at 5 ("Coverage for you and your eligible dependents is funded by employer contributions made by *participating employers* on behalf of their employees." (emphasis added)) and 55 (noting availability of "[a] complete list of employers, employee organizations, and unions sponsoring the [p]lan"). MRHF is the name of the plan. ECF No. 1-1 at 109; ECF No. 1-5 at 55.

Plaintiffs allege that the health insurance plan "has" Roofers Local 65, MRHF, the MRHF Board of Trustees, and Nelson "as its [p]lan [a]dministrator." ECF No. 1 at 2 (citing ECF No. 1-1).

A summary plan description of the health insurance plan (the "Health Insurance SPD"), which is attached to and referenced in the complaint, indicates that the "Plan Administrator" of Leary's health insurance plan is the "Trustees of the [MRHF]," which, for purposes of this Order, the Court will presume is the same entity as Defendant the MRHF Board of Trustees. ECF No. 1-1 at 109. The MRHF Board of Trustees is also listed as "Plan Sponsor." *See id.* at 1 and 109 (listing "Trustees").[4] The Health Insurance SPD does not reference Roofers Local 65 or Nelson by name. *Id.* The health insurance plan "is maintained under a collective bargaining agreement." *Id.*

---

[4]MRHF is also listed as the "Plan Administrator and Plan Sponsor" in the document's definitions section, and the "Plan Administrator" for privacy protection purposes. ECF No. 1-1 at 98, 121.

Throughout this Order, the Court uses the lowercase "plan administrator" when discussing Plaintiffs' allegations as to who is the plan administrator or discussing plan administrators generally. The Court uses the uppercase Plan Administrator(s) when quoting or adopting language from documents attached to the pleadings that employ this term as a term of art.

The Health Insurance SPD indicates that "[f]or . . . reduction in work hours" resulting in termination of health insurance, "it is the *Plan Administrator's* responsibility to notify the qualified beneficiary of the right to elect continuation of coverage." *Id.* at 101.

An additional summary plan description, also attached to and referenced in the complaint, details all benefits available to employees, including health insurance (the "General Benefits SPD"[5]). ECF No. 1 at 3 (citing ECF No. 1-5). The MRHF Board of Trustees is identified as the "Plan Sponsor" for the benefits discussed therein and further is "legally designated as the Plan Administrator." *See* ECF No. 1-5 at 55, 57. "The Trustees [which the Court will presume herein refers to the MRHF Board of Trustees] make all policy decisions for [MRHF], including the benefits provided and the administration of [MRHF]." *Id.* at 55. The General Benefits SPD indicates that Nelson serves as the chairman of the MRHF Board of Trustees and as one of three labor-side trustees on behalf of Roofers Local 65. *Id.* There are three management-side trustees as well. *Id.* The benefits discussed in the General Benefits SPD "are governed by the collective bargaining agreement between . . . Roofers . . . Local . . . 65 and participating roofing contractors," presumably including Langer. *Id.* at 5.[6]

The General Benefits SPD states that "[b]ased on monthly employer reports, [the MRHF Board of Trustees is] aware of some [q]ualifying [e]vents, such as loss of eligibility for coverage . . . because of a reduction in [the employee's] hours." *Id.* at 17. "The [MRHF] Office, not later than 30

---

[5]The Court will refer to the General Benefits SPD and the Health Insurance SPD together as the "SPDs."

[6]The General Benefits SPD also reflects that MRHF and Roofers Local 65 share a mailing address. ECF No. 1-5 at 2, 42, 54, 55.

days after receipt of notice of an employee's loss of coverage from the employer or by examining monthly contribution reports, will advise the [q]ualified [b]eneficiary of" their options for continuation coverage. *Id.*

Leary was on the above-discussed health insurance plan during his employment with Langer. ECF No. 1-4. As of at least January 2021, CK also received health insurance as Leary's beneficiary on the plan. ECF No. 1 at 2 (stating that CK was Leary's "qualified beneficiary"); ECF No. 1-2 (document listing CK as a "[c]overed [m]ember" under Leary's health insurance plan as of January 1, 2021). Plaintiffs allege that "Defendants are well aware of who [Leary's] qualified beneficiaries are," presumably referring to CK. ECF No. 1 at 3. Plaintiffs further state that Defendants knew that CK and Leary did not share an address. *See id.* at 4 ("Defendant's [sic] admitted that the most recent information available . . . provide[s] the only address for CK, which is not the same address as [Leary].").

On October 28, 2022, Leary was injured while working for Langer. ECF No. 1 at 2. "Defendants then provided insurance for [Leary, and presumably his beneficiaries including CK] under their 'loss of time' provision for 12 months . . . ." *Id.* At some point thereafter, Leary "did not work the required hours to maintain insurance coverage, which caused . . . Defendants to cancel [his] insurance." *Id.* Plaintiffs attach to the complaint a form titled "COBRA Continuation Coverage Election Form," dated February 20, 2024, and addressed to Leary. ECF No. 1-3. The letter indicated that if he "d[id] not make payment of the enclosed self/payment, OR elect[ed] to continue [his] health care coverage" by completing the form and returning it to MRHF, his coverage would end on March 1, 2024. *Id.* at 1. Leary's health insurance coverage was terminated on March 1, 2024. ECF No. 1 at 2.

Plaintiffs say that they did not receive legally required notices under COBRA that CK's health insurance would be terminated along with Leary's. *See id.* ("Plaintiffs unexpectedly discovered, without notice from . . . Defendants, that there was no insurance coverage for [CK,] who is a qualified beneficiary . . . ."). This prevented Plaintiffs from "enforc[ing] [CK's] independent right to elect continuation of insurance coverage" and caused Plaintiffs "to pay out of pocket [health] expenses [for CK's Type 1 diabetes] at a significant cost, without warning." *Id.* at 4.

Plaintiffs say that Defendants violated their obligations under COBRA in two ways. First, Plaintiffs allege that Langer failed its employer obligations under COBRA "to provide legally required notice to the Plan Administrator when [Leary] became eligible for COBRA coverage" due to his reduced hours. *Id.* at 2–3. As noted above, under the General Benefits SPD, the MRHF Board of Trustees would have found out about Leary's reduction in hours through a notice or monthly reports from Langer. *See* ECF No. 1-5 at 17. Plaintiffs contend that there is a factual dispute about whether and when Langer provided notice or a monthly contribution report to the plan administrator(s) indicating that Leary was eligible for COBRA coverage. ECF No. 14 at 6–7 ("There is a factual dispute regarding the ineffective and inaccurate timing of the 30-day Notice that was not provided by Langer regarding when [Leary] became eligible for COBRA coverage . . . .").

Second, Plaintiffs say that "Defendants did not provide a COBRA notice to CK." ECF No. 1 at 3.[7] As noted above, a continuation form is

---

[7]Plaintiffs allege that "[t]he requirement that the Plan Administrator notify [Leary] with an Election Notice of COBRA rights, within the required time that notification was allegedly received from Langer . . . that [Leary] qualified for

attached to the complaint, dated February 20, 2024 and addressed to Leary. ECF No. 1-3. Plaintiffs seem to dispute that this letter was actually mailed to Leary. *See id.* at 4 (noting that the form dated February 20, 2024 was "allegedly 'mailed' to Leary at an undetermined time"). CK did not receive her own COBRA continuation form before her time to elect continuation coverage elapsed or "at any time" to present. *Id.* at 3.

For relief, Plaintiffs seek "statutory damages of $110 per day, beginning on March 1, 2024, from Defendants." *Id.* at 5. They seek "compensatory and punitive damages" for "extreme mental anguish, substantial and unexpected costs, and life-threatening hardship to [CK]." *Id.* They also ask the Court to "require full COBRA coverage payments from the Defendants, retroactively to March 1, 2024," which the Court presumes to refer to COBRA premiums, and to "order[] . . . Defendants to pay all medical costs and expenses associated with [CK's] healthcare since March 1, 2024." *Id.* at 5–6. They also request a jury trial. *Id.* at 6.

### 4.    ANALYSIS

As noted in Section One, this case concerns the Consolidated Omnibus Budget Reconciliation Act or COBRA, 29 U.S.C. § 1611 et seq. The Court begins by providing background on the relevant statutes and regulations. COBRA amended the Employee Retirement Income Security Act ("ERISA") to require the sponsor of a health insurance plan to offer "continuation coverage" when an employee or other "qualified beneficiary" loses coverage due to a number of "qualifying event[s]." 29

---

coverage, was not met, and therefore, the Defendant's alleged notice to [Leary] is in violation of . . . COBRA." ECF No. 1 at 3. However, Leary is not a party to this case and Plaintiffs do not purport to sue for his entitlement to notice under COBRA. Any allegations that his rights under COBRA were violated is irrelevant.

U.S.C. §§ 1161(a); *see also Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 585 (7th Cir. 2011), *as modified* (Sept. 22, 2011) ("These notices [regarding "departing employees' . . . right to extend their health insurance coverage at their own cost after their employment ends"] are commonly called 'COBRA notices,' as the obligation was imposed by an amendment to the Employee Retirement Income Security Act (ERISA) of 1974 contained in the Consolidated Omnibus Budget Reconciliation Act (COBRA) of 1985."); *Keegan v. Bloomingdale's, Inc.*, 992 F. Supp. 974, 976–77 (N.D. Ill. 1998) ("COBRA requires that when a qualifying event occurs[,] employers give former employees the option to continue their health insurance coverage under the employer's plan at the former employee's expense." (citing 29 U.S.C. § 1161)).

Qualifying events include a reduction in hours. 29 U.S.C. § 1163(2). Qualifying beneficiaries include "the dependent child of the employee." 29 U.S.C. § 1167(3)(A)(ii). The parties do not dispute that Leary's reduction in hours was a qualifying event or that CK was Leary's qualified beneficiary for COBRA purposes. They also do not dispute that CK was entitled to her own COBRA continuation notice. *See McDowell v. Krawchison*, 125 F.3d 954, 959 (6th Cir. 1997) ("The statute explicitly requires notice to be given to any qualified beneficiary . . . . A [qualified beneficiary] has his or her own rights under COBRA, which are *not* dependent on the covered employee's rights. For example, a covered spouse might choose to elect coverage while the covered employee does not . . . ." (citing 29 U.S.C. §§ 1166(a)(4), 1167(3)(A)(i), and 1165(2))).

"COBRA requires that the employer notify the plan administrator of the qualifying event within thirty days [of the date of the qualifying event]." *Keegan*, 992 F. Supp. at 977 (citing 29 U.S.C. § 1166(a)); 29 U.S.C. § 1166(a)(2)

(requiring employer notice to plan administrator in the case of a reduction in hours under § 1163(2)). Alternatively, "in the case of a group health plan which is a multiemployer plan," the employer must notify the plan administrator of the qualifying event in "such longer period of time as may be provided in the terms of the plan." 29 U.S.C. § 1166(a)(2); *id.* § 1166(b) (this notice requirement "shall be considered satisfied in the case of a multiemployer plan in connection with [a reduction in hours] if the plan provides that the determination of the occurrence of such qualifying event will be made by the plan administrator").

"The plan administrator is [then] responsible for notifying [the] former employee[] of their right to receive continuation coverage within fourteen days after it receives notice of the qualifying event." *Keegan*, 992 F. Supp. at 977 (citing 29 U.S.C. § 1166(a), (c)). The plan administrator must also notify any other qualifying beneficiaries of their right to receive continuation coverage. 29 U.S.C. § 1166(a)(4)(A). Alternatively, "in the case of a . . . multiemployer plan," the plan administrator must notify the plan participant or beneficiary within "such longer period of time as may be provided in the terms of the plan." 29 U.S.C. § 1166(c). The implementing regulations, 29 C.F.R. § 2590.606-1 et seq., further detail responsibilities for employers and plan administrators when notifying employees and their qualifying beneficiaries of their rights to continue coverage.

"Any administrator . . . who fails to meet the [notice] requirements in [29 U.S.C. § 1166(a)(4)] . . . may in the court's discretion be personally liable to such [health insurance plan] participant or beneficiary in the amount of up to $[110] a day from the date of such failure . . . , and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1); *see also id.* § 1132(a)(1)(A) ("A civil action may be brought . . .

by a participant or beneficiary . . . for the relief provided for in [§ 1132(c)(1)] . . . ."); 29 C.F.R. § 2575.502c-1 (adjusting penalty from $100 to $110).

A health insurance plan participant or beneficiary may file suit "to recover benefits due to [her] under the terms of [her] plan." *Id.* § 1132(a)(1)(B). They may also sue to "obtain . . . appropriate equitable relief" to "redress" "any act or practice which violates any provision of this subchapter [29 United States Code Chapter 18 Subchapter I, which encompasses 29 U.S.C. § 1166] or the terms of the plan." *Id.* § 1132(a)(3). This is known as a breach of fiduciary duty claim. *See Brosted v. Unum Life Ins. Co of Am.*, 421 F.3d 459, 465 (7th Cir. 2005) (citing 29 U.S.C. § 1132(a)(3), also known as ERISA § 502(a)(3)).[8]

Plaintiffs' claims and Moving Defendants' motions to dismiss concern the above-stated rules. *See generally* ECF Nos. 1, 21, 24, 45. The Court addresses Langer's, Roofers Local 65, and Nelson's motions to dismiss in turn.

### 4.1 Langer's Motion to Dismiss

As noted *supra* Section 3, Plaintiffs' main allegation against Langer specifically is that it did not notify the other Defendants of the qualifying event for COBRA purposes: that Leary's work hours had decreased such that he had become eligible for continuation coverage. Plaintiffs contend

---

[8]Plaintiffs do not specify under which subsection their claims proceed. They seek statutory damages, ECF No. 1 at 5, which are available under § 1132(c)(1) and (a)(1)(A). The Court discusses further below whether their other requested remedies—"COBRA payments" (i.e. premiums), payment of CK's medical expenses incurred after her insurance was terminated, and compensatory and punitive damages, *id.* at 5–6, are available for the asserted violations against any of the Moving Defendants.

that Langer is liable because it "failed [at] the first step in the chain of involvement and command that has caused the COBRA notice violations and damages." ECF No. 28 at 2. Plaintiffs also include Langer among those Defendants who allegedly failed to provide a COBRA continuation form to CK. ECF No. 1 at 3.

Langer argues that it did not have any obligations under the relevant regulatory/statutory scheme or the terms of the SPDs to provide COBRA notices indicating Leary's impending termination of coverage to Plaintiffs. ECF No. 24 at 4–8. To the extent that "Plaintiffs allege that Langer failed to provide timely notice to MRHF in advance of the termination of coverage" (that is, to provide the employer notice to the plan administrator of a qualifying event, which precedes the COBRA continuation notice to the employee and beneficiary, *see supra* Section 4), Langer argues that "this allegation is illogical and contradicted by Plaintiffs' own allegations." *Id.* at 7. Finally, Langer argues that irrespective of whether it had any obligation to Plaintiffs or breached that obligation, Plaintiffs cannot sue Langer because claims for COBRA notice violations can proceed only against plan administrators, and it is not a plan administrator. *Id.* at 8–10. As stated below, the Court ultimately agrees with Langer and will grant its motion to dismiss.

### 4.1.1 Whether Langer Was Required to Provide a COBRA Continuation Notice to CK

First, Langer correctly observes that it had no responsibility to provide a COBRA continuation notice to CK because under the express terms of the SPDs, that was the responsibility of plan administrators, and Plaintiffs have not pleaded that Langer was a plan administrator. ECF No. 24 at 5–8 (citations omitted). The relevant statutory and regulatory

language explicitly makes plan administrators responsible for issuing COBRA continuation notices to employees and their beneficiaries upon a qualifying event. 29 U.S.C. § 1166(a)(4)(A); 29 C.F.R. § 2590.606-4(a).[9] Plaintiffs do not allege that Langer was a plan administrator; indeed, they allege that every other defendant besides Langer was a plan administrator. ECF No. 1 at 1–2. As detailed *supra* Section 3, both SPDs list MRHF and/or the MRHF Board of Trustees as plan administrators, and neither lists Langer in this role or even mentions the company by name. The complaint and attachments do not provide any basis to conclude that Langer was a plan administrator or had a legal requirement to issue a COBRA continuation notice to CK.

Plaintiffs assert in their brief that "Langer had a legal requirement to inform [CK] of her COBRA rights to continue insurance," but this argument is unpersuasive. ECF No. 28 at 8. First, they do not clearly assert this in the complaint. *See* ECF No. 1 at 2–3 (alleging only that Langer failed to provide employer notice and that "the requirement" to provide a COBRA continuation notice "was not met"). They cite to the regulatory requirement to provide such notice, *id.* at 3, but legal conclusions in a complaint are not accepted as true on a motion to dismiss. *Iqbal*, 556 U.S. at 678.

For these reasons, any claim by Plaintiffs that Langer failed to provide CK with a COBRA continuation notice fails as a matter of law, as Langer had no obligation to do so.

---

[9]To the extent the health insurance plan at issue was a multiemployer plan, *see infra* Section 4.1.2, the plan administrator is similarly responsible for this task. 29 U.S.C. § 1166(b); 29 C.F.R. § 2590.606-4(b)(3).

### 4.1.2 Whether Langer Was Required to Provide an Employer Notice of a Qualifying Event to Plan Administrators

The Court now turns to whether Plaintiffs may proceed on against Langer on the theory that its purported failure to provide employer notice of Leary's reduction in hours to plan administrators led to plan administrators' failure to provide a COBRA continuation notice to CK—in other words, that Langer can be liable for a COBRA notice violation because it was the "first step in the chain."[10] ECF No. 28 at 2. Langer acknowledges

---

[10]The parties have not briefed whether a claim of this nature against an employer who is not a plan administrator is appropriate under the statutory text of § 1166 and § 1132. The Court located *Keegan v. Bloomingdale's*, in which the United States District Court for the Northern District of Illinois analyzed a claim that the defendant employer "failed to notify . . . the administrator of [the defendant employer's] group health plan" of a qualifying event. 992 F. Supp. at 975. The court there assumed without analyzing that such a claim against the defendant employer for failing to "compl[y] with their statutory duty to notify the plan administrator" could proceed when the defendant employer was indisputably not a plan administrator. *See id.* at 977.

Additionally, Langer cites *Anyachebelu v. Brooklyn Hospital*. ECF No. 30 at 3 (citing No. 16CIV3159DLIVMS, 2017 WL 9511073, at *20 (E.D.N.Y. July 20, 2017), *report and recommendation adopted*, No. 16CV3159DLISJB, 2017 WL 4233033 (E.D.N.Y. Sept. 22, 2017)). The court there similarly examined, and ultimately dismissed, a claim against a defendant employer for failing to give the plan administrator "notice of [the p]laintiff's termination within the 30-day statutory period required by COBRA," which allegedly caused the plan administrator to "fail[] to give [the p]laintiff notice of her rights" to continued coverage. 2017 WL 9511073, at *17. The court did not question whether such a claim against an employer who is not a plan administrator is appropriate under the statutory text of § 1166 and § 1132. The court did note, however, that the "[p]laintiff . . . name[d] the plan administrator, the Trustees of the New York State Nurses Association Benefits Fund, as a defendant, and that the Trustees have asserted cross claims against Brooklyn Hospital for the Hospital's purported failure to notify the Trustees of Plaintiff's termination within the statutorily prescribed period." *Id.* at *20.

The Court will presume without deciding that a COBRA notice violation claim, whether for statutory damages or another remedy, can proceed on the

that an employer is obligated to notify the administrator of a health insurance plan "of the occurrence of a qualifying event," including a "covered employee's . . . reduction in hours of employment." ECF No. 24 at 4–5 (quoting 29 C.F.R. § 2590.606-2(a)). However, Langer says that this requirement applies only to "group health plans and is explicitly excluded from application [to] multiemployer plans that delegate the above-mentioned responsibility to the plan administrator." *Id.* at 5 (citing 29 C.F.R. § 2590.606-2(d)). It argues that MRHF is such a multiemployer plan and expressly delegates to plan administrators the responsibility for determining whether a qualifying event has occurred and issuing COBRA continuation notices to qualifying beneficiaries. *Id.* (citing ECF No. 1-5 at 5, 7 (General Benefits SPD) and 1-1 at 119 (Health Insurance SPD)); *id.* at 6 (citing ECF No. 1-1 at 101 (Health Insurance SPD) and 1-5 at 12–13, 17 (General Benefits SPD). Accordingly, Langer argues that it is not properly named as a defendant in this suit and Plaintiffs cannot sue it for any purported failure to provide the employer notice to plan administrators. *Id.* at 8 (arguing that Langer had "no control over the [p]lan [a]dministrator's decision to terminate coverage" and had no responsibility to issue CK a COBRA continuation notice); ECF No. 30 at 10 ("29 C.F.R. § 2590.606-2 . . . [d]oes [n]ot [c]reate an [a]venue for [a] [c]laim [a]gainst Langer").

The requirement that an employer notify a health insurance plan administrator about an employee's reduction in hours does not apply "to any employer that maintains a multiemployer plan . . . if the plan provides

---

theory that Langer, which is not a plan administrator, failed its duty to notify plan administrators of Leary's reduction in hours.

. . . that the administrator shall determine whether such a qualifying event has occurred." *Id.* § 2590.606-2(d).

"Multiemployer plan" is not defined in the COBRA regulations, but is defined in the ERISA statutes, so the Court will adopt ERISA's definition of the term. *See Just v. Accu-Turn, Inc.*, No. 09-C-0181, 2012 WL 1067106, at *5 (E.D. Wis. Mar. 28, 2012) ( "ERISA provides the statutory framework for a COBRA claim."); 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan" and "welfare plan" to include plans "for the purpose of providing for its participants or their beneficiaries . . . medical, surgical, or hospital care or benefits"). Under ERISA, a multiemployer plan is one "to which more than one employer is required to contribute" and "which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer." 29 U.S.C. § 1002(37)(A)(i)–(ii). Both SPDs specify that they are maintained pursuant to collective bargaining agreements and reference other employers who are party to the agreements. This indicates that the health insurance plan provided to Leary is, as a matter of law, a multiemployer plan; Langer is correct on this point.

However, the SPDs do not specify that the plan administrator(s) "shall determine whether . . . a qualifying event [triggering a COBRA continuation notice] has occurred." 29 C.F.R. § 2590.606-2(d); *see also* 29 U.S.C. § 1166(a)(2) and (b). Langer argues that "the express terms of the SPDs" make it "the [p]lan [a]dministrator's responsibility to determine that a qualifying event has occurred . . . ." ECF No. 24 at 6 (citations omitted). But, as discussed below, none of their cited language actually does so, and the Court was unable to locate any such language in either SPD.

Langer cites the Health Insurance SPD's statement that "it is the Plan Administrator's responsibility to notify the qualified beneficiary of the right to elect continuation coverage" as showing that it is the plan administrators' responsibility to determine that a qualifying event has occurred. *Id.* (quoting ECF No. 1-1 at 101). But the quoted text does not plainly say that the plan administrator does so, or speak to who does. It only discusses which party is to notify beneficiaries of continuation of coverage. Similarly, Langer cites for the same proposition the following language from the General Benefits SPD:

> Based on monthly employer reports, [the MRHF Board of Trustees is] aware of some [q]ualifying [e]vents, such as loss of eligibility for coverage based on contributions received from contributing employers because of a reduction in your hours and your ceasing active work. The Fund Office, not later than 30 days after receipt of notice of an employee's loss of coverage from the employer or by examining monthly contribution reports, will advise the Qualified Beneficiary of the coverages, options, costs, self-payment due dates, and duration of the self- payment privileges.

*Id.* (quoting ECF No. 1-5 at 17). Again, nothing about this text says that the plan administrator determines when a qualifying event has occurred, only that the MRHF Board of Trustees, a plan administrator under the SPDs, is "aware" of some of them. Further, this text suggests that the *employer* notifies the plan administrators of loss of coverage. These two pieces of SPD language do not specify that a plan administrator determines whether a qualifying event triggering a continuation notice has occurred, as is required for application of the multiemployer exclusion under § 2590.606-2(d).

The other language to which Langer points is similarly unclear. ECF No. 30 at 10–11 (citations omitted). Langer argues that because the General Benefits SPD specifies that the MRHF Board of Trustees "determines the benefits to be provided" and "retain[s] the right to interpret, change, add, or delete benefits, self-payment rates, eligibility rules, or any other provisions" related to the health insurance plan, this language indicates that the plan administrator defines qualifying events and "interpret[s] whether such an event has occurred." *Id.* at 10 (quoting ECF No. 1-5 at 6). But the ability to change benefits and eligibility rules does not necessarily encompass the ability to determine how those eligibility rules apply to individual plan participants. Langer also says that because the General Benefits SPD directs employees to "monitor their work history . . . to be aware of their eligibility status" and directs them to contact MRHF about their eligibility for benefits "corroborates that the [p]lan [a]dministrator . . . determine[s] qualifying events and eligibility." *Id.* at 11 (citing ECF No. 1-5 at 13). This gets closer but still misses the mark, because it does not affirmatively state that the plan administrator is in fact going to evaluate participant inquiries regarding eligibility. While it may be true in fact that plan administrators are responsible for determining when a qualifying event occurs, this quoted language from the SPDs—all that the Court may consider at the motion to dismiss stage—on its face does not assign such a responsibility to plan administrators. The Court will not infer that the quoted language has this meaning, because Langer fails to cite authority authorizing the Court to so loosely construe plan document language.

The Court accordingly cannot accept that, by operation of 29 C.F.R. § 2590.606-2(d), 29 C.F.R. § 2590.606-2(a)'s employer notice requirement did not apply to Langer. Langer's position also raises the question: if Langer is

not responsible for notifying plan administrators of Leary's qualifying event (his reduction in hours), which Defendant was? Is Langer arguing that it was only responsible for providing raw data to plan administrators from which the plan administrators would determine what is and is not a qualifying event, or that it was not responsible for providing any information at all regarding Leary's employment to plan administrators? Langer's position is not entirely coherent. In any event, even assuming that the employer notice requirement applies to Langer, Plaintiffs' claim fails for other reasons as discussed *infra* Section 4.1.4.

### 4.1.3 Whether Plaintiffs Plausibly Allege that Langer Failed to Provide an Employer Notice of a Qualifying Event to Plan Administrators

The Court next turns to Langer's arguments with respect to Langer allegedly failing to notify the plan administrator(s) of Leary's reduction in hours, irrespective of whether and how any employer notice requirement in the relevant statute or regulation applies to Langer. Langer argues that because Plaintiffs plead that Leary's coverage was terminated, the only logical conclusion from this allegation is that Langer indeed provided plan administrator(s) with notice of Leary's reduction in hours—i.e., that it is not plausible to conclude that Langer failed to notify plan administrator(s) of Leary's reduction in hours. *Id.* at 7 ("MRHF could not have terminated coverage based upon Leary's reduction in hours without notice [from Langer] that he had a reduction in hours."). Plaintiffs contend that the allegation that CK did not receive a COBRA notice plausibly supports that Langer *must* not have played its part in the process of cancelling Leary's, and CK's, health insurance. *See* ECF No. 28 at 11 ("Because . . . Plaintiff[s] ha[ve] never received notice to the present date, there is plausible relief for

noncompliance of the timely notice requirement by Langer, as the first chain in the link to comply with COBRA.").

The Court cannot adopt Langer's position. It perhaps makes sense to conclude that Plaintiffs' own allegation that Leary's insurance was terminated undermines any claim that Langer failed to provide notice of Leary's reduction in hours. As the General Benefits SPD states, employers are to provide notice of an employee's loss of coverage or monthly reports to the plan administrator(s), and receipt of such notice or report triggers the provision of COBRA notices to qualified beneficiaries. This language implies that Leary's coverage could not have been terminated without a notice or monthly reports from Langer. Under Langer's reasoning, the Court would have to disregard this language in the General Benefits SPD (which is part of the complaint) to find Plaintiffs' allegation that Leary failed its notice-or-monthly report responsibility plausible. ECF No. 24 at 7 (citing *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010)).

But language in the SPDs or in the relevant law, *id.* at 7 (referencing the "unambiguous language of the statutes"), requiring Langer to do something is distinct from an allegation that Langer did not in fact complete that task. Just because Langer was required under the SPDs and relevant law to report information about Leary's employment to plan administrators does not mean that they actually did so. But this is what Langer's position asks the Court to assume. It is true that "[t]o the extent that the terms of an attached document conflict with the allegations of the complaint, the attached document controls." *Schwarz v. Loyola Univ. Med. Ctr.*, 659 F. Supp. 2d 988, 991–92 (N.D. Ill. 2009) (citing *Centers v. Centennial Mortgage Inc.*, 398 F.3d 930, 933 (7th Cir. 2005)). But that is not what is happening here. If Plaintiffs had alleged in the complaint that Langer did not issue any

employer notice to plan administrators and then attached to the complaint such a notice, then Langer's position would be sustainable. Rather, in this instance, Plaintiffs' allegation that Langer did not issue an employer notice can be reconciled with its requirement to do so as stated in the SPDs, by accepting as true both that Langer was required to issue such a notice but failed to do so. It may be true in fact that Langer issued the required notice, but that is not the inquiry on a motion to dismiss.[11]

Importantly, Plaintiffs cannot rely on their allegations that CK did not receive a COBRA continuation notice to show that Langer did something wrong, *see* ECF No. 28 at 11, because Langer had no obligation to issue COBRA continuation notices. *Supra* Section 4.1.1. But the complaint otherwise adequately alleges that Langer failed its duty to provide employer notice of Leary's reduction in hours. The Court therefore rejects this aspect of Langer's argument that the complaint fails to state a claim.[12]

---

[11]Langer notes that "MRHF has not asserted, and has in fact denied, that Langer failed to provide it any required notice." ECF No. 24 at 8 (citing ECF No. 18 at 12). Even if the Court takes judicial notice of this assertion by MRHF in its answer, *Price*, 2024 WL 4300655, at *4 n.3 (citation omitted), it would be irrelevant on a motion to dismiss, which only requires accepting *Plaintiffs'* allegations as true. *But see Anyachebelu*, 2017 WL 9511073, at *20 (dismissing claims against employer and noting that the "[p]laintiff did name the plan administrator, the Trustees of the New York State Nurses Association Benefits Fund, as a defendant, and that the Trustees have asserted cross claims against Brooklyn Hospital for the Hospital's purported failure to notify the Trustees of Plaintiff's termination within the statutorily prescribed period.").

[12]Plaintiffs also seem to argue that Langer either failed entirely to provide employer notice or did so in an untimely manner. ECF No. 28 at 6 ("There is a factual dispute regarding the ineffective and accurate timing of the 30-day notice that was clearly not provided by Langer . . . ."). The complaint alleges only that Langer failed to notify plan administrators of the qualifying event, not that their notice occurred but was untimely.

"Generally, pleadings may not be amended by a statement in a party's brief." *Stocks v. Life Ins. Co. of N. Am.*, 861 F. Supp. 2d 948, 951 (E.D. Wis. 2012)

#### 4.1.4    Whether Langer is an Appropriate Defendant

Finally, Langer argues that Plaintiffs' claims can proceed only against plan administrators, and, as it is not a plan administrator and "had no fiduciary duty with respect to" the health insurance plan, Plaintiffs have no cause of action against it. ECF No. 24 at 8–10. Because, as explained below, the type of relief sought determines the party against whom the claim for relief is appropriately asserted, the Court assesses these arguments through the lens of Plaintiffs' requested relief.

#### 4.1.4.1    Statutory Damages

Plaintiffs seek statutory damages, ECF No. 1 at 5, which they may recover for COBRA notice violations. 29 U.S.C. § 1132(a)(1)(A) and (c)(1). Langer first argues that the statute authorizing suits for statutory damages for COBRA notice violations refers only to plan administrators, and since the complaint and SPDs show that Langer is not a plan administrator, Plaintiffs' claims are subject to dismissal to the extent they seek statutory damages. ECF No. 24 at 8–9 (citing § 1132(c)(1) and *Klosterman v. W. Gen. Mgmt., Inc.*, 32 F.3d 1119, 1122 (7th Cir. 1994); other citations omitted). The Court agrees: by the plain terms of § 1132(c)(1), an employer is not an appropriate defendant for a COBRA notice violation claim for statutory damages, only an "administrator" is. 29 U.S.C. § 1132(c)(1); *Hughes Aircraft*

_____

(citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011)). "The Court considers materials or elaborations disclosed for the first time in a response brief only 'so long as the new elaborations are consistent with the pleadings.'" *Thomas v. Dart*, No. 17 C 4233, 2018 WL 4016315, at *4 (N.D. Ill. Aug. 22, 2018) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). A theory that Langer provided untimely notice would not be consistent with the complaint, which alleges only that Langer failed to provide the requisite employer notice; Plaintiffs did not argue in the alternative that that Langer did so but in an untimely manner. A theory that Langer provided untimely employer notice is therefore not properly before the Court.

*Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("'[I]n any case of statutory construction, our analysis begins with 'the language of the statute.' . . . And where the statutory language provides a clear answer, it ends there as well." (quoting *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992) then citing *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)).

Plaintiffs have provided no in-circuit authority permitting a COBRA notice violation claim for statutory damages to proceed against an employer who is not a plan administrator, who had no responsibility to provide COBRA continuation notices, and whose only alleged responsibility for the COBRA notice violation is failing at the first step to provide an employer report of a reduction in hours to the plan administrator. *See supra* note 10. Plaintiffs cite *Fenner v. Favorite Brand International, Inc.* to show that an employer may be subject to COBRA notice violation damages. ECF No. 28 at 11 (citing 25 F. Supp. 2d 870 (N.D. Ill. 1998)). In that case, the court analyzed whether statutory damages under § 1132(c)(1) were available against the defendant employer and specifically evaluated whether or not the defendant employer was a plan administrator. 25 F. Supp. 2d at 873. The court concluded that the defendant employer "may qualify as a plan administrator" even though insurance plan documents did not designate it as such because it "had the duty to notify its employees of their COBRA rights." *Id.* at 874–75. As discussed *supra* Section 4.1.1.1, the express terms of the SPDs make the plan administrators—MRHF and the MRHF Board of Trustees—responsible for providing COBRA notices; Langer is not assigned this responsibility. *Fenner* allowed a statutory damages claim to proceed after finding that the defendant employer qualified as a plan administrator, which the Court cannot conclude here, and is therefore inapposite. Plaintiffs also cite *Honey*

*v. Dignity Health*, ECF No. 28 at 7–8, in which the plaintiff sought statutory damages for COBRA notice violation claims, but in that case the defendant employer was undisputedly "both the 'sponsor' and 'administrator' of the [p]lan." 27 F. Supp. 3d 1113, 1116, 1121–22 (D. Nev. 2014). *Honey* is therefore also irrelevant.

*Klosterman*, which Langer cites, ECF No. 24 at 8, held that "any cause of action for violations of the[] disclosure requirements [in 29 U.S.C. § 1021(a)–(b)] is proper only against the plan administrator, the party responsible under the statute." 32 F.3d at 1122. Plaintiffs argue that *Klosterman* is distinguishable from the present case because the plaintiff in that case pursued a different cause of action (inaccuracies in the summary plan document) than Plaintiffs pursue here. ECF No. 28 at 11–12 (citing 32 F.3d at 1122).

True, *Klosterman* is not a COBRA notice violation case, which Langer concedes in its reply. ECF No. 30 at 3. The *Klosterman* plaintiffs, participants in a health insurance plan, attempted to proceed on a claim that the summary plan document failed to accurately describe circumstances that could lead to loss of benefits and apprise participants of their rights and obligations under the insurance plan, in violation of 29 U.S.C. § 1021. 32 F.3d at 1122; 29 U.S.C. § 1132(a)(8) (authorizing such suits). The sole defendant, Western General, was a "claims administration company," and the Seventh Circuit noted that the plan expressly listed another individual (the employer's human resources manager) as plan administrator. *Id.* at 1120. Because Western General was not a plan administrator, the Seventh Circuit held it "cannot be held liable for any accuracies in the SPD." *Id.* at 1122.

*Klosterman* is on point. The *Klosterman* plaintiffs sought to impose liability for duties that "Congress has explicitly provided . . . fall[] on the plan administrator" on an entity that was not a plan administrator. *Id.* (citing 29 U.S.C. § 1021(a), (b)); 29 U.S.C. § 1166(a)(4)(A) (providing that "the administrator" shall send COBRA notices); *id.* § 1166(b) (same for multiemployer plans); 29 C.F.R. § 2590.606-4(a) (same); *id.* § 2590.606-4(b)(3). Plaintiffs here seek to do the same against Langer, who is not a plan administrator. Accordingly, Langer correctly observes that "where [C]ongress identifies the plan administrator as responsible for complying with a statutory requirement, the plan administrator is the only entity against whom a claim can be pursued for violations." ECF No. 30 at 3 (citing *Klosterman*, 32 F.3d at 1122); *see also Hughes*, 525 U.S. at 438. Plaintiffs' claim for statutory damages therefore cannot proceed against Langer, which is undisputedly not a plan administrator.

### 4.1.4.2    Benefits Due Under the Plan

In addition to statutory damages, Plaintiffs appear to seek benefits due to them under the plan. *See* ECF No. 1 at 6 (requesting "medical costs and expenses accrued" since CK lost coverage);[13] *see also* ECF No. 24 at 9 and ECF No. 30 at 9 (Langer characterizing Plaintiffs' claims this way). This request for relief would proceed under 29 U.S.C. § 1132(a)(1)(B), also known as ERISA § 501(a)(1)(B). *See Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1489 (7th Cir. 1996) (noting, in an ERISA preemption context, that claims to recover benefits due under the terms of the plan proceed under § 502(a)(1)(B)); *Anyachebelu*, 2017 WL 9511073, at *17, *19 (examining under

---

[13]Plaintiffs also seek "full COBRA payments" and compensatory and punitive damages. ECF No. 1 at 5. The Court discusses *infra* Section 4.4 why these forms of relief are not available.

Case 2:24-cv-01097-JPS    Filed 09/30/25    Page 26 of 44    Document 50

§ 1132(a)(1)(B) plaintiff's claim "for the $17,000 she incurred in medical bills during the period she was uninsured" after not receiving a timely COBRA continuation notice (footnote omitted)).

Claims for benefits due under § 1132(a)(1)(B) proceed against the plan itself. *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 911 (7th Cir. 2013) ("'The benefits are an obligation of the plan, so the plan is the logical and normally the only proper defendant' in a claim for benefits due under § 1132(a)(1)(B)." (quoting *Leister v. Dovetail, Inc.*, 546 F.3d 875, 879 (7th Cir. 2008)); *accord Jass*, 88 F.3d at 1490 (citing *Gelardi v. Pertec Comput. Corp.*, 761 F.2d 1323, 1324 (9th Cir. 1985) and 29 U.S.C. § 1132(d)(2)); *accord Chilcote v. Blue Cross Blue Shield United of Wis.*, 841 F. Supp. 877, 880 (E.D. Wis. 1993) (citing *Miller v. Pension Plan for Emp. of Coastal Corp.*, 780 F. Supp. 768, 773 (D. Kan. 1991) and *Holland v. Bank of Am.*, 673 F. Supp. 1511, 1518 (S.D. Cal. 1987)).

Plaintiffs attempt to distinguish *Jass* and *Chilcote* from this case on the facts and the specific legal issues raised therein. ECF No. 28 at 12–15. These arguments are irrelevant, however, because the point of law to be drawn from *Jass* and *Chilcote*—that the proper defendant from whom to seek relief for benefits due under health insurance plan governed by ERISA is the plan itself—applies in this case simply by virtue of the type of relief that Plaintiffs seek. *See Larson*, 723 F.3d at 911 (citation omitted).

Langer is not the plan. Therefore, to the extent Plaintiffs are raising a claim to recover benefits due to them under their health insurance plan after they were unable to elect COBRA coverage, such a claim cannot proceed against Langer.

### 4.1.4.3     Breach of Fiduciary Duty

Langer also characterizes Plaintiffs' claimed COBRA notice violations as conceivably seeking relief under a breach of fiduciary duty theory. ECF No. 24 at 9 (citing *Bixler v. Cent. Penn. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1299–1300 (3d Cir. 1993) and *Just*, 2012 WL 1067106, at *6); ECF No. 30 at 5 (citing "ERISA § 502(a)(3)"). The Court will presume without deciding that a COBRA notice violation claim can proceed as a breach of fiduciary duty claim under ERISA; such a claim proceeds under 29 U.S.C. § 1132(a)(3)). *Brosted*, 421 F.3d at 465 (citations omitted). "To state a claim for breach of fiduciary duty under ERISA, the plaintiff must establish: (1) that the defendants are plan fiduciaries; (2) that the defendants breached their fiduciary duties; and (3) that the breach caused harm to the plaintiff." *Id.* (citing *Kamler v. H/N Telecomm. Serv., Inc.*, 305 F.3d 672, 681 (7th Cir. 2002)).

"ERISA provides that 'a person is a fiduciary to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.'" *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 465 (7th Cir. 2010) (quoting 29 U.S.C. § 1002(21)(A)); *see also Brooks v. Pactiv Corp.*, 729 F.3d 758, 765 (7th Cir. 2013) ("A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial adviser to a plan." (quoting *Pegram v. Herdrich*, 530 U.S. 211, 222 (2000); internal quotation marks and bracketing omitted)).

Conclusory allegations that a defendant had a fiduciary duty are insufficient to show that the defendant is indeed a fiduciary; the complaint must allege specific fiduciary acts. *See Bartnett v. Abbott Lab'ys*, 492 F. Supp. 3d 787, 795–96 (N.D. Ill. 2020).

Langer argues that Plaintiffs fail on the first element because they have "provide[d] no facts demonstrating that Langer has a fiduciary duty with respect to the [p]lan—there are zero allegations that Langer has authority[] or discretion to manage or administer the [p]lan, or exercise control over the [p]lan assets." ECF No. 24 at 10. Langer notes that the SPDs "expressly recognize" the MRHF Board of Trustees as plan administrator, sponsor, and fiduciary. ECF No. 30 at 7 (citing ECF No. 1-1 at 109 and ECF No. 1-5 at 49 and 55). Plaintiffs argue in response that an employer can become "a fiduciary by taking steps on behalf of employees to provide them with benefits and insurance coverage," and that "[b]y carrying out these actions on behalf of Langer's employees, [Langer is] acting in a fiduciary capacity for their employees." ECF No. 28 at 13 (citing *Bixler*, 12 F.3d at 1292).

Plaintiffs are mistaken. The only non-conclusory allegation in the complaint regarding Langer's purported fiduciary status is that Langer provided health insurance to its employees. ECF No. 1 at 2. "[T]he mere fact that an employer provides its employees with a benefit plan does not convert the employer into an ERISA fiduciary for all actions it takes with regard to the benefit plan. . . . An employer acts as a fiduciary only when it undertakes plan management or administration . . . ." *Bland v. Fiatallis N. Am., Inc.*, No. 02 C 69, 2002 WL 31655213, at *4 (N.D. Ill. Feb. 3, 2003) (citing *In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997)). Plaintiffs cite no authority to support their assertion that Langer became a fiduciary

merely by offering or making contributions toward a health insurance plan, and the Court has not located any. Further, the SPDs name the MRHF Board of Trustees and no other Defendant as plan fiduciary. ECF No. 1-1 at 109; ECF No. 1-5 at 49. Langer is not a plan fiduciary and Plaintiffs' claims against Langer are subject to dismissal on this basis.[14]

For all the reasons discussed in this Section, the Court will grant Langer's motion to dismiss Plaintiffs' claims against it. The dismissal will operate with prejudice because Plaintiffs' claims against Langer fail as a matter of law and Plaintiffs could not fix these issues by pleading new or additional facts. *See Gandhi v. Sitara Cap. Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013) (noting that leave to amend is not required where "amendment would be futile" (citing *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th

---

[14]The Court addresses Langer's argument that Plaintiffs may not seek compensatory or punitive damages in this action, ECF No. 30 at 9, below in Section 4.2.2.

Plaintiffs argue in their brief that "Langer did not abide by the terms of the [SPDs] when it failed to provide COBRA required notice regarding [Leary's] reduction in work hours." ECF No. 28 at 4. Langer responds that: (1) Plaintiffs did not assert this particular theory in their complaint; and (2) even if they had, "any potential claim arising from such inaction would be a claim . . . for breach of contract," which is distinct from a breach of fiduciary obligation. ECF No. 30 at 11 (citing *In re Luna*, 406 F.3d 1192, 1203, 1205 (10th Cir. 2005)); ECF No. 24 at 10 n.5 (noting "these claims are preempted by ERISA" (citing *Teamsters Local 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 825 (7th Cir. 2014)).

This is not entirely accurate, as § 1132(a)(3), the breach of fiduciary duty cause of action, by its terms permits suits "to enforce . . . the terms of the plan." In any event, though, and insofar as Plaintiffs seek to enforce the terms of the plan and such enforcement would redress their alleged injuries, such a suit could not proceed against Langer because it is not a plan administrator, as just explained. But for the reasons stated below in Section 4.2.2, Langer's argument that Plaintiffs could not pursue a breach of contract claim for damages or other contract remedies for a COBRA notice violation because such a claim proceeds under state law is correct.

Cir. 2009))). Additionally, Plaintiffs had the opportunity, but declined, to amend their complaint to address these issues, further warranting denial of leave to amend. *See* ECF No. 14 (describing meet and confer efforts).

### 4.2 Roofers Local 65's Motion to Dismiss

Roofers Local 65 moves to dismiss on several grounds. First and foremost, like Langer, it argues that it is not a plan administrator, so cannot be sued either for statutory damages under § 1132(c)(1) or for damages for a breach of fiduciary duty. ECF No. 21 at 3–8. Second, it argues that to the extent Plaintiffs intend to pursue state law claims, those claims are preempted by ERISA. *Id.* at 8–11.

#### 4.2.1 Whether Roofers Local 65 is an Appropriate Defendant

##### 4.2.1.1 Statutory Damages

Roofers Local 65 first argues that it is not a plan administrator for purposes of Plaintiffs' claim for statutory damages. *Id.* at 3–5. It argues that the relevant statutory definition of "plan sponsor" dictates that the MRHF Board of Trustees is the plan sponsor here, which is "further supported by the [General Benefits] SPD's specific identification of the [MRHF] Board of Trustees as the sponsor of [MRHF]." *Id.* at 4 (citing 29 U.S.C. § 1002(16)(B)(iii) and ECF No. 1-5 at 55). Building on this, Roofers Local 65 argues that "[u]nder 29 U.S.C. § 1002(16)(A)(ii), the plan sponsor is also the [plan] administrator if the plan does not designate any person as its administrator." *Id.* at 4. It says the General Benefits SPD does not designate a plan administrator, making the MRHF Board of Trustees the plan administrator "by default." *Id.*

Plaintiffs argue that Roofers Local 65 is indeed plan administrator because "the [MRHF] Board of Trustees includes the [l]abor [t]rustees,

which includes Roofers Local . . . 65." ECF No. 29 at 4–5. They cite no authority for this assertion that a union can be considered a plan administrator when a board of trustees includes union representatives.

Plaintiffs are wrong. Their position finds no support in case law. It also does not make practical sense in the context of their own complaint and who they have chosen to name as parties. If the membership of a board of trustees drives which organizations are considered plan administrators, then why did Plaintiffs not name the management side trustees of the MRHF Board of Trustees as Defendants in this action? ECF No. 1-5 at 55 (naming SRS Roofing and Sheet Metal, Millen Roofing, and Carlson Racine Roofing & Sheet Metal, Inc. as management-side trustees).

Roofers Local 65 is ultimately correct, though its argument overcomplicates the issue and misreads the documents attached to the complaint. The General Benefits SPD notes that the MRHF Board of Trustees is "legally designated as the Plan Administrator." ECF No. 1-5 at 57. The Health Insurance SPD similarly designates the MRHF Board of Trustees (and/or MRHF) as both plan sponsor and plan administrator. ECF No. 1-1 at 109; *see also supra* note 4 and accompanying text. Neither of these documents refers to Roofers Local 65 as a plan administrator. Because documents attached to the complaint contradict and therefore supersede Plaintiffs' allegations in the complaint that Roofers Local 65 is a plan administrator, those documents control. *Schwarz*, 659 F. Supp. 2d at 991–92 (citation omitted).

Plaintiffs also cite *Anyachebelu* for the proposition that "'the designated [p]lan administrator' or 'a [p]lan trustee' can be liable for benefits due under § 1132(a)(1)(B)." ECF No. 29 at 5 (citing 2017 WL 9511073, at *19 (quoting *Crocco v. Xerox Corp.*, 137 F.3d 105, 107–08 (2d Cir.

1998))). This case does not help them. First, *Anyachebelu* stated this point of law with respect to recovery of benefits due under § 1132(a)(1)(B), not claims for statutory damages under § 1132(c)(1). Even if *Anyachebelu* were binding on the Court, which it is not, this case does not establish that "a plan trustee" can be sued for statutory damages. Indeed, the statutory damages remedy in § 1132(c)(1) specifically proceeds against plan administrators, whereas the remedy to recover benefits due proceeds against the plan itself. *Supra* Section 4.1.4.2.[15] Roofers Local 65 is neither. Second, Roofers Local 65 *as an entity* is not a trustee on the MRHF Board of Directors; rather, its individual members serve as trustees. ECF No. 1-5 at 55. So even if *Anyachebelu* were relevant, Roofers Local 65 would still not be amenable to suit.

Nothing in the complaint or attachments or the applicable law supports a finding that Roofers Local 65 is a plan administrator for purposes of a claim for statutory damages, so Plaintiffs' claim for statutory damages cannot proceed against it.

#### 4.2.1.2 Breach of Fiduciary Duty Claims

Roofers Local 65 next argues that any claim against it for a breach of fiduciary duty is improper because the complaint does not plead facts showing that the union is a plan fiduciary. ECF No. 21 at 5–8.

---

[15]Roofers Local 65 seems to believe that Plaintiffs are *not* seeking benefits under the plan pursuant to § 1132(a)(1)(B). *See* ECF No. 31 at 5. As discussed *supra* Section 4.1.4.2, the complaint does appear to seek recovery of benefits due. But for the same reasons discussed in that Section, any claim for benefits due proceeds against the plan, so regardless of what *Anyachebelu* says, under Seventh Circuit law, Roofers Local 65 would not be a proper defendant against whom to seek this type of remedy. *Larson*, 723 F.3d at 911.

Plaintiff pleads only that Roofers Local 65 is a plan administrator and, together with the other Defendants, failed to provide COBRA continuation notice. ECF No. 1 at 1, 3. This is not enough to plead a fiduciary duty under the standard laid out *supra* Section 4.1.4.4, because it does not show that Roofers Local 65 was "acting in the capacity of manager, administrator, or financial adviser to a plan." *Brooks*, 729 F.3d at 765 (citation omitted). Merely saying that Roofers Local 65 violated COBRA notice requirements does not mean that Roofers Local 65 had a fiduciary duty to provide COBRA continuation notices. *See Bartnett*, 492 F. Supp. 3d at 795–96 (conclusory allegations are insufficient to show a fiduciary duty). The complaint alone does not show that Roofers Local 65 was acting as a fiduciary with respect to the plan at issue here, and indeed, the SPDs contradict any allegation to this effect by naming the MRHF Board of Trustees and no other Defendant as plan fiduciary. ECF No. 1-1 at 109; ECF No. 1-5 at 49.

Plaintiffs cannot salvage their claims against Roofers Local 65 by writing in their brief that Roofers Local 65 "makes determinations regarding reductions in employees' work hours leading to a loss of insurance coverage and their eligibility for COBRA coverage." ECF No. 29 at 6; *see also id.* at 11 (stating that Roofers Local 65 "had authority and responsibility in the administration of the . . . SPD[s]"). Their assertion that a "[u]nion [r]epresentative, Amy Colton," admitted over the phone to Krukowski that she did not mail a COBRA continuation notice to CK, *id.* at 7, also does not support finding that Roofers Local 65 is a fiduciary. First, these assertions are not properly before the Court and cannot be construed as part of the complaint, as Plaintiffs may not amend their complaint via a brief (and had but declined the opportunity to amend, *see* ECF No. 13).

*Stocks*, 861 F. Supp. 2d at 951 (citation omitted); *see also Matter of Morris Paint & Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985) ("[F]actual assertions made by counsel in a brief, unsupported by affidavits, cannot be given any weight." (citing *S.A. Empresa v. Walker Kidde & Co., Inc.*, 690 F.2d 1235, 1238 & n.5 (9th Cir.1982) and *Garza v. Chicago Health Clubs, Inc.*, 347 F. Supp. 955, 964 (N.D. Ill. 1972))). Moreover, even if these assertions were properly raised in the complaint and established that Roofers Local 65 was "acting in the capacity of manager, administrator, or financial adviser to a plan," *Brooks*, 729 F.3d at 765, they are inconsistent with the SPDs, which do not assign plan administration responsibility to the union.[16]

For all these reasons, and because the complaint fails otherwise to accuse Roofers Local 65 of any wrongdoing besides the alleged COBRA notice violation, Roofers Local 65's motion to dismiss will be granted. For the same reasons explained with respect to Langer's motion, the dismissal will operate with prejudice. *Gandhi*, 721 F.3d at 869 (citation omitted).

### 4.2.2    ERISA Preemption

Roofers Local 65 next argues that Plaintiffs attempt to "graft[] . . . state law remedies upon an ERISA claim [for] failure to provide COBRA notices," and that doing so is preempted by ERISA. ECF No. 21 at 8–11. Langer and Nelson argue similarly, *supra* note 14 and ECF No. 45 at 7–8 and

---

[16]Plaintiffs also argue that the fact that Roofers Local 65 is represented by the same counsel as the MRHF Board of Trustees, MRHF, and Nelson "effectively combines them as [t]he [f]iduciary in this case." ECF No. 29 at 16 (citing ECF Nos. 16, 20, 26). They cite no authority to support this contention and the Court will not address it further. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ." (collecting authority)). And as already noted above, Roofers Local 65 nominating individual union members to serve on the MRHF Board of Trustees, ECF No. 28 at 13, does not indicate that the union had a fiduciary duty.

9–11, but Roofers Local 65's briefing provides the most fulsome analysis, so the Court addresses this argument here. The Court's findings below apply to Langer, Roofers Local 65, and Nelson.

Plaintiffs, missing the point entirely, argue that "[a]ny state law claims that Defendant[s] ha[ve] raised as being relevant in this case, or potentially being a part of this action, are not proper at this time." ECF No. 29 at 15. But it is not Roofers Local 65 or any other Defendant who has raised a state law claim (nor can they; they are not the plaintiff and have not raised any counter- or crossclaims). Rather, Plaintiffs' own complaint seeks remedies—compensatory and punitive damages—that may only be available under state law causes of action and/or which are not available under ERISA. This is what Roofers Local 65 and Langer are attempting to defend.

"[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54–56 (1987) and *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 143–145 (1990)). Plaintiffs' complaint does not explicitly invoke but raises claims under 29 U.S.C. § 1132(a)(3), also known as ERISA § 502(a)(3), the breach of fiduciary duty statute. Remedies for claims of breach of fiduciary duty under § 1132(a)(3) are limited to "traditional equitable remedies such as awarding an injunction or restitution." *Browerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 592 (7th Cir. 2000) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993)); *see also Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010) ("ERISA authorizes an award of equitable relief alone to a plan participant suing on

her own behalf for breach of fiduciary duty." (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002))).

"[L]egal remedies, such as money damages, are not appropriate equitable relief under § 1132(a)(3)." *Browerman*, 226 F.3d at 592. "However, 'when sought as a remedy for breach of fiduciary duty[,] restitution is properly regarded as an equitable remedy because the fiduciary concept is equitable.'" *Id.* (quoting *Health Cost Controls of Ill., Inc. v. Washington*, 187 F.3d 703, 710 (7th Cir. 1999)). Thus, if Plaintiffs can show that Defendants breached a fiduciary duty, they are entitled to equitable relief, which can take the form of "hav[ing] an opportunity to tender the COBRA payment that would have been paid if the [p]lan had lived up to its obligation to [provide a continuation notice]. If [they] make[] that payment, the [p]lan then must pay the . . . medical expenses" that CK incurred. *Id.*

Based on *Browerman*, Plaintiffs' request for payment of CK's medical expenses—understood as a request for restitution, an equitable remedy, rather than a request for compensatory or actual damages—would be available for a claim of breach of fiduciary duty under § 1123(a)(3).[17] Accordingly, this request for relief would not be preempted by ERISA; Moving Defendants are incorrect on this point. However, because as stated in the balance of this order, none of Moving Defendants are appropriately named as parties in this case, Plaintiffs will not be able to recover this remedy from them.

Plaintiffs additionally request "compensatory damages," ECF No. 1 at 5, but it is not clear how this form of damages is different than CK's

---

[17]As the Court has discussed previously, such relief could alternatively be available through a claim for benefits due under § 1132(a)(1)(B), but would have to proceed against the plan.

medical expenses. If Plaintiffs are asserting "compensatory damages" as a standalone request for relief, the complaint does not clarify what those damages, if awarded, would compensate *besides* CK's medical expenses. The request for compensatory damages appears duplicative, and in any event is inappropriate under ERISA. *See Browerman*, 226 F.3d at 592 (noting that money damages are not equitable relief under 1132(a)(3)); § 1132(c)(1) and (a)(1)(A) (not permitting damages besides statutory damages); § 1132(a)(1)(B) (permitting only recovery of benefits due).

In no event are Plaintiffs' requested punitive damages, ECF No. 1 at 5, available for her COBRA notice violation claims. *Low v. McGraw-Hill Cos., Inc.*, 361 F.3d 335, 343 (7th Cir. 2004) ("[N]owhere in ERISA is there authorization for an award of punitive damages."). Moving Defendants are correct on this point; Plaintiffs may not pursue punitive damages.[18]

### 4.3 Nelson's Motion to Dismiss

Nelson argues that only "[t]he [MRHF] Board of Trustees as a body, not . . . Nelson in his personal capacity, can face liability under § 1132(c)(1)" and be on the hook for statutory damages. ECF No. 45 at 4–7. He also argues that Plaintiffs' remaining requested relief in the form of "free COBRA coverage" and CK's medical costs are unavailable either through a claim for benefits due under § 1132(a)(1)(B), as a claim for a surcharge under § 1132(a)(3), or through § 1132(a)(2), "which allows a participant or beneficiary to bring an action for appropriate relief under 29 U.S.C. § 1009

---

[18]The Court's findings that Plaintiffs' requests for compensatory and punitive damages are inappropriate apply to all Defendants. However, because only Moving Defendants have raised this argument, the Court will not dismiss these requests at this juncture. The remaining Defendants should seek dismissal of these requests for relief in future motion practice or through a Rule 41 stipulation of dismissal.

[to hold] a fiduciary personally liable to make good to the [p]lan any losses to the [p]lan resulting from the fiduciary's breach of his fiduciary duties." *Id.* at 8–11.

### 4.3.1 Statutory Damages

As discussed (*ad nauseum* at this point), statutory damages under § 1132(c)(1) are only available from the plan administrator. Plaintiffs allege that Nelson is a plan administrator. ECF No. 1 at 2. Nelson argues that any claim for statutory damages cannot proceed against him in his personal capacity, but rather only against the entity which is the plan administrator—the MRHF Board of Trustees—"because the [entity] and not the individual member is the administrator of the [p]lan." ECF No. 45 at 6 (citing *Cummings by Techmeier v. Briggs & Stratton Ret. Plan*, 606 F. Supp. 659, 663 (E.D. Wis. 1985), *rev'd on unrelated grounds*, 797 F.2d 383 (7th Cir. 1986)). Nelson further argues that the complaint does not allege that Nelson in particular took any actions to administer or oversee the plan's provision of COBRA notices, and indeed that the General Benefits SPD delegates responsibility for providing COBRA notices to the "Fund Office," not the individual members of the MRHF Board of Trustees. *Id.* at 5–7 (citing ECF No. 1-5 at 17).

To show that Nelson is a plan administrator, Plaintiffs rely on a statement in the General Benefits SPD that "[t]he Trustees make all policy decisions for the fund, including the benefits provided and the administration of the fund." ECF No. 47 at 4 (quoting ECF No. 1-5 at 55). This is unpersuasive in light of the General Benefits SPD's explicit delegation of responsibility for sending COBRA notices to the MRHF office. ECF No. 1-5 at 17. This delegation in the General Benefits SPD also undermines Plaintiffs' contention in the complaint that Nelson failed to

provide a COBRA notice to CK. ECF No. 1 at 3; *see Schwarz*, 659 F. Supp. 2d at 991–92 (citation omitted). Plaintiffs have not pleaded facts indicating that Nelson specifically was responsible for sending COBRA notices, and the information in the SPDs contradicts such a finding.

Plaintiffs try to argue that Nelson was functionally a plan administrator because he "was personally and directly notified [by Plaintiffs] via email communication on May 10 and . . . May 24, 2024 that [CK] had still not received" a COBRA continuation notice. ECF No. 47 at 4; ECF No. 48 (emails from Krukowski to Nelson, an individual with a Langer email address, and an individual with a Roofers Local 65 email address). This "prior knowledge and deliberate inaction[] reinforce his individual liability for the noncompliance," according to Plaintiffs. ECF No. 47 at 5. These email communications are irrelevant for two reasons. First, as the Court has noted several times already, Plaintiffs did not include these communications in the complaint, nor reference them with sufficient specificity therein that the Court would consider them incorporated in and "central to" the complaint. *See* ECF No. 1 at 4 (noting Plaintiffs sent letters to "Defendants," generally); *Williamson*, 714 F.3d at 436. Plaintiffs' attachment of the letters to a brief filed many months after the inception of this case also robs Nelson and the other Defendants of notice of what each of their roles in the alleged wrongdoing is. *See Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019) (discussing group pleading). Because these communications are not part of the complaint, Plaintiffs may not attempt to amend the complaint and add them through their briefing. *Stocks*, 861 F. Supp. 2d at 951 (citation omitted). Even if the communications were appropriately considered part of the complaint, they add nothing to the complaint that would allow it to proceed past Nelson's motion to

dismiss. Plaintiffs' belief in May 2024 and now that Nelson is a plan administrator does not make it so.

The Court also wonders if a claim against Nelson would be duplicative of a claim against the MRHF Board of Trustees but need not examine this question. The complaint does not show or permit an inference that Nelson is a plan administrator. Plaintiffs' claim for statutory damages therefore cannot proceed against him.

### 4.3.2   Other Remedies

Nelson argues that, to the extent Plaintiffs seek recovery of benefits due under § 1132(a)(1)(B), they cannot do so because CK never elected COBRA coverage and therefore is due no benefits. ECF No. 45 at 8. This is a circular and meritless argument. The reason that CK never elected COBRA coverage is because one or more Defendants allegedly did not give her the opportunity to do so by providing her with a COBRA notice. Nelson's position would require the Court to disregard the entire premise of Plaintiffs' lawsuit. Plaintiffs may seek recovery of benefits due as stated elsewhere in this Order.

Having concluded that Nelson is not an appropriate defendant and having otherwise addressed Plaintiffs' requested remedies herein, *see supra* Sections 4.2.2 and 4.4, the Court declines to address Nelson's claims that Plaintiffs cannot proceed against him through § 1132(a)(2) or on a claim for a surcharge under § 1132(a)(3). *Id.* at 9–11. Should further motion practice occur in this case, remaining Defendants are not precluded from raising these arguments.

For all of these reasons, Nelson's motion to dismiss will be granted. For the same reasons explained with respect to Langer and Roofers Local

65's motions, the dismissal will operate with prejudice. *Gandhi*, 721 F.3d at 869 (citation omitted).

### 4.4    Additional Comments on Plaintiffs' Requested Remedies

The Court pauses to make Plaintiffs aware of an additional issue with respect to the relief they seek. As discussed already, one of Plaintiffs' proposed remedies is payment of CK's medical expenses incurred after her coverage was terminated on March 1, 2024. ECF No. 1 at 5–6. This relief appears to be available through a claim for a breach of fiduciary duty, *Browerman*, 226 F.3d at 592, or through a claim to recover benefits due under § 1132(a)(1)(B). *See Anyachebelu*, 2017 WL 9511073, at *17 (considering claim under § 1132(a)(1)(B) for benefits due); *Buford v. Gen. Motors, LLC*, No. 416CV14465TGBMKM, 2022 WL 258453, at *5, *14 (E.D. Mich. Jan. 26, 2022) (addressing claim under § 1132(a)(1)(B) for benefits due and discussing "any medical expenses [the plaintiff] incurred that would have been covered by COBRA" as a potential remedy).

However, if Plaintiffs' claims succeed against the remaining Defendants, the MRHF Board of Trustees and MRHF, Plaintiffs will still have to pay COBRA premiums for the relevant time period before they are entitled to reimbursement of CK's medical expenses. *See Browerman*, 226 F.3d at 592; *Buford*, 2022 WL 258453, at *14 ("If [the plaintiff] does not pay the premiums for those months, that would constitute a failure to mitigate damages and would make [plaintiff] ineligible to recover the medical expenses as actual damages." (citing *Holford v. Exhibit Design Consultants*, 218 F. Supp. 2d 901, 907 (W.D. Mich. 2002))).[19] Plaintiffs' request for "full

---

[19]The Court has also not found any case law showing that the Court may order defendants to pay a qualified beneficiary's COBRA premiums under § 1132(c)(1)'s "such other relief" provision, or any other part of ERISA.

COBRA coverage payments," ECF No. 1 at 5, therefore appears nonviable. Unless Plaintiffs can point to legal authority permitting this form of relief, they likely cannot get relief in the form of COBRA premiums (or as Nelson describes it, completely "free COBRA coverage," ECF No. 45 at 8).

Finally, Plaintiffs request a jury trial. *Id.* at 6. It is unclear whether Plaintiffs are entitled to a jury trial on COBRA notice violation claims; however, the Court defers analysis of this issue for a later time. If the case is not resolved by dispositive motion practice or settlement, the Court may order the parties to brief this issue.

5.     **CONCLUSION**

For the reasons stated above, Moving Defendants' motions to dismiss will all be granted, and these three Defendants will be dismissed with prejudice from this case. The Court additionally notes that Krukowski's conduct during this case—failing to confer and come to any meaningful agreement on documents required by the Court's protocols, *see* ECF Nos. 13, 14, 22, 25, 43, 46; repeatedly asserting arguments supported by no legal authority; repeatedly attempting to amend the complaint by inappropriate means; and insufficiently researching the remedies available and against which Defendants—is concerning. Perhaps this is "[m]ere clumsy lawyering." *Fuery v. City of Chicago*, 900 F.3d 450, 464 (7th Cir. 2018) (citing *Tucker v. Williams*, 682 F.3d 654, 661–62 (7th Cir. 2012)). And to be sure, Moving Defendants' attorneys made a number of missteps in the briefing too. But attorneys who hold themselves out as officers of the court can and must do better. If Krukowski continues to exhibit similar conduct through the remainder of this matter, the Court may consider imposing appropriate sanctions, including but not limited to ordering her to pay

opposing counsel's fees or dismissing the case. *See id.* (noting Court's inherent authority to impose sanctions).

Accordingly,

**IT IS ORDERED** that Defendant The Local 65 Roofers Union's motion to dismiss, ECF No. 20, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Langer Roofing & Sheetmetal's motion to dismiss, ECF No. 23, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Taylor Nelson's motion to dismiss, ECF No. 44, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that Defendants The Local 65 Roofers Union, Langer Roofing & Sheetmetal, and Taylor Nelson be and the same are hereby **DISMISSED with prejudice** from this action.

Dated at Milwaukee, Wisconsin, this 30th day of September, 2025.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge